1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8                         ----oo0oo----

9

10   BRUCE KNIESPECK,
                                      CIV. NO. S-01-0878 WBS EFB
11            Plaintiff,

12        v.                          ORDER RE: MOTION FOR
                                      RECONSIDERATION AND
13                                    ATTORNEYS' FEES AND COSTS
     UNUM LIFE INSURANCE COMPANY OF
14   AMERICA, et al.,

15            Defendants.

16                         ----oo0oo----

17            Pursuant to Rule 59(e) of the Federal Rules of Civil

18   Procedure, plaintiff moves for reconsideration of this court's

19   Findings of Fact and Conclusions of Law ("Findings") entered on

20   December 21, 2006, to augment the award of $171,720.00 to

21   include prejudgment interest.  Plaintiff also moves for

22   attorneys' fees and costs.  The factual history and procedural

23   background are set forth in detail in the court's earlier

24   Findings.

25        A.   Motion for Reconsideration of Findings to Include

26             Prejudgment Interest

27   _____ The court did not address the question of prejudgment

28   interest in its Findings because plaintiff did not discuss the

     question in his pretrial briefing, and when specifically asked

1  at the conclusion of the hearing whether he was seeking an award
2  of prejudgment interest, plaintiff's attorney was unable to say
3  whether plaintiff was seeking such relief, what legal
4  authorities exist to support such a request, or what amount was
5  appropriate.

6          It is not clear that a request for prejudgment
7  interest is appropriately raised for the first time on a motion
8  for reconsideration under Rule 59(e).  Reconsideration is an
9  "extraordinary remedy, to be used sparingly in the interests of
10 finality and conservation of judicial resources."  Kona Enters.,
11 Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).
12 Reconsideration is ordinarily appropriate only when the
13 "district court (1) is presented with newly discovered evidence,
14 (2) committed clear error or the initial decision was manifestly
15 unjust, or (3) if there is an intervening change in controlling
16 law."  Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc., 5
17 F.3d 1255, 1263 (9th Cir. 1993); United States v. Westlands
18 Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (citing
19 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir.
20 1999)).

21          Since plaintiff did request prejudgment interest in
22 the prayer of the complaint, and the court arguably could have
23 considered the issue in its Findings notwithstanding plaintiff's
24 apparent inability to address the issue at the time, with the
25 issue now properly briefed, the court will consider plaintiff's
26 request.  See Osterneck v. Ernst & Whinney, 489 U.S. 169, 176
27 (1989) (finding proper a post-judgment motion for prejudgment
28 interest, appropriately characterized as a motion to alter or

amend the judgment).

1. <u>Awarding Prejudgment Interest</u>

"Whether to award prejudgment interest to an ERISA plaintiff is 'a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.'" <u>Landwehr v. DuPree</u>, 72 F.3d 726, 739 (9th Cir. 1995); <u>see also</u> <u>Shaw v. Int'l Ass'n of Machinists</u>, 750 F.2d 1458 (9th Cir. 1985). In deciding whether to award prejudgment interest:

> [A] district court will consider a number of factors, including whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness.

<u>Osterneck</u>, 489 U.S. at 176.

The court first concludes that prejudgment interest is necessary to fully compensate the plaintiff for his injuries. Plaintiff has been wrongfully denied his benefits for over <u>eight</u> <u>years</u>, an excessive period of time. Moreover, as a result of defendant's denial of benefits, combined with plaintiff's inability to work, plaintiff lost his home to foreclosure and became homeless. (UACL 00762-763.) Defendant has been collecting interest since September, 1998, on the money wrongfully withheld from plaintiff. An award of prejudgment interest amounts only to the defendant disgorging this ill-gotten profit. See <u>Nichols v. Unum Life Ins. Co. of Am.</u>, 287 F. Supp. 2d 1088, 1095 (N.D. Cal. 2003) (citing <u>Sweet v. Consol.</u> <u>Aluminum Corp.</u>, 913 F.2d 268, 270 (6th Cir. 1990)) (noting that "[f]ailure to award prejudgment interest in such a situation

3

1  'would approve of an unjust enrichment'"); <u>see also</u> <u>Gelfgren v.</u>

2  <u>Republic Nat. Life Ins. Co.</u>, 680 F.2d 79, 82 (9th Cir. 1982)

3  ("To allow appellees to escape the payment of prejudgment

4  interest would unjustly enrich appellees.").

5       Potential wrongdoing by defendant is not as clear--

6  there is no persuasive evidence of bad faith.  The

7  administrative record contains a report that followed a Targeted

8  Disability Income Multistate Examination ("TDIME"), which

9  revealed questionable insurance practices by UNUM.  The report,

10  issued in November, 2004, included instances where "benefits

11  were denied on the grounds that the claimant had failed to

12  provide 'objective evidence' of a disabling condition," when the

13  terms of the policy did not require such evidence.  (UACL

14  00413.)

15       The report, however, does not refer to plaintiff's

16  claim.[1]  There is no specific evidence that UNUM acted

17  inappropriately toward plaintiff.  A finding of bad faith is not

18  implied simply because this court determined that benefits were

19  wrongly withheld.  Although plaintiff provided medical opinions

20  substantiating his claim for disability, defendant also

21  proffered physician opinions to the contrary.

22       While this court therefore declines to find bad faith

23  by UNUM, it concludes that the balance of the equities requires

24

25

26

_____

27      [1]  The report was, however, issued over eighteen months
28  prior to UNUM's final denial of plaintiff's claim, which would have
put UNUM on notice of the propriety of such practices.

4

awarding prejudgment interest.[2]  Defendant would not experience
any financial hardship by paying prejudgment interest, nor would
such a payment negatively affect other UNUM policy
beneficiaries.  If plaintiff were awarded the past benefits
without prejudgment interest, he would not be adequately
compensated for defendant's withholding of his payments.  <u>See
e.g.</u> <u>Fleming v. Kemper Nat. Servs., Inc.</u> 373 F. Supp. 2d 1000,
1013 (N.D. Cal. 2005) (holding that plaintiff in an ERISA case
was entitled to prejudgment interest on withheld benefits,
despite a finding of no bad faith).

        2.  <u>Prejudgment Interest Calcuation</u>

    "[T]he interest rate proscribed for post-judgment
interest under 28 U.S.C. § 1961 is appropriate for fixing the
rate of prejudgment interest unless the trial judge finds, on
substantial evidence, that the equities of that particular case
require a different rate."  <u>Grosz-Salomon v. Paul Revere Life
Ins. Co.</u>, 237 F.3d 1154, 1164 (9th Cir. 2001).  The interest
rate for awarding prejudgment interest is based on the rate of a
"fifty-two week United States Treasury bill[]."  28 U.S.C. §
1961.  For prejudgment interest, as opposed to post-judgment
interest, however, the court should apply the interest rate in
effect at the time payment was due to the plaintiff, not the
rate applicable on the date of judgment.  <u>See</u> <u>Nelson v. EG & G
Energy Measurements Group</u>, 37 F.3d 1384, 1391-92 (9th Cir. 1994)

---

    [2]    Although defendant cites to several purported "delays"
by plaintiff in the processing of his claim appeal, the court is
convinced that these instances were simply plaintiff's attempts at
gathering proper medical evidence to support his claim and appeal.
(See, e.g., UACL 00482.)

1 (noting that the more accurate method of calculation would be to
2 use the "rate at the beginning of each year").

3       Attached as Exhibit D to plaintiff's motion (filed
4 separately as "Revised Interest Calculation") is a calculation
5 of plaintiff's prejudgment interest according to the above
6 formula.  (Pl.'s Mot. to Amend Ex. C.)  Plaintiff notes 52-week
7 Treasury bill rates, for the beginning of each year between 1998
8 and 2006, of 4.87%, 4.58%, 6.09%, 5.11%, 2.28%, 1.42%, 1.31%,
9 2.79%, and 4.38%.[3]  Based on these rates, and a monthly benefit
10 of $1,717.20 from September, 1998, until the present, plaintiff
11 is due $27,147.19 in prejudgment interest.

12     B.   Motion for Attorneys' Fees

13           1.   Awarding Attorneys' Fees

14           ERISA provides that "[i]n any action under this
15 subchapter . . . by a participant, beneficiary, or fiduciary,
16 the court in its discretion may allow a reasonable attorney's
17 fee and costs of action to either party."  29 U.S.C. §
18 1132(g)(1).  The Ninth Circuit has established a five-factor
19 test for awarding attorneys' fees, which considers:

20      (1) the degree of the opposing parties' culpability or
     bad faith; (2) the ability of the opposing parties to
21      satisfy an award of fees; (3) whether an award of fees
     against the opposing parties would deter others from
22      acting under similar circumstances; (4) whether the
     parties requesting fees sought to benefit all
23      participants and beneficiaries of an ERISA plan or to
     resolve a significant legal question regarding ERISA;
24      and (5) the relative merits of the parties' positions.

25 Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980).

26 "No one of the Hummell factors, however, is necessarily

27 _____

28     [3]   4.87% represents the rate on September 1, 1998, not
January 1, as that was when plaintiff's claim was first denied.

1    decisive, and some may not be pertinent in a given case."

2    Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416

3    (9th Cir. 1984).  The factors require a balancing of the

4    equities, and the court need not find that each one supports an

5    award of fees in granting such relief.  Elwain McElwaine v. US

6    West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999).

7          As discussed above, the court finds no bad faith by

8    UNUM.  Although the TDIME report listed past fiduciary misdeeds,

9    there is no indication of such conduct in this case.  Thus, this

10   factor does not weigh in favor of an award of attorneys' fees.[4]

11         Defendant does not contest that they are capable of

12   satisfying an award of fees.  (Def.'s Opp'n to Pl.'s Mot. for

13   Att'ys Fees 4-5.)  Therefore, the second factor weighs in favor

14   of such an award.

15         The third factor, the deterrent effect of an award on

16   other persons in similar circumstances also weighs in favor of

17   granting attorneys' fees.  Defendant contends that "the award of

18   the claim benefits to plaintiff represents a more than adequate

19   deterrence for insurers."  (Def.'s Opp'n to Pl.'s Mot. for

20   Att'ys Fees 4.)  However, the award of claim benefits represents

21   an expense which the ERISA insurers already owe the

22   beneficiaries.  Thus, if the maximum amount of an award against

23   an ERISA insurer were to be capped at the amount of the

24   beneficiary's claim, there would be incentive for insurers to

25   _____

26         [4]   UNUM's conduct toward plaintiff, however, bears many
27   similarities to the illegal and improper practices detailed in the
     TDIME report.  Thus, while this court declines to find bad faith,
28   it concludes that the absence of bad faith does not weigh strongly
     against awarding attorneys' fees.

                                    7

1  deny every claim, and try their chances at litigation.  "A fee
2  award would deter other employers from forcing beneficiaries to
3  undertake costly litigation to preserve their claims."
4  McElwaine, 176 F.3d at 1173; see also Carpenters, 726 F.2d at
5  1416 (9th Cir. 1984).

6          The fourth factor also weighs in favor of an award of
7  attorneys' fees.  While plaintiff's motivation in bringing his
8  claim was rooted in his desire to recover his own benefits, this
9  action required a significant legal interpretation of the
10 Policy.  Phase 1 of the trial settled apparent ambiguities in
11 the Policy, both as to the meaning of "partial disability," as
12 well as to what proof of disability is required.  (May 29, 2002
13 Order.)  Such "a decision clarifying the terms of a plan after
14 litigation would 'benefit all participants and beneficiaries' by
15 settling a disputed provision or an ambiguity.  This would be
16 helpful to the trustees in future administration, but 'often
17 depend[s] on a plaintiff's initiative in bringing suit.'"
18 Smith, 746 F.2d at 590 (citing Carpenters, 726 F.2d at 1416).

19         The final factor, the relative merits of the parties'
20 positions, also weighs in favor of awarding attorneys' fees.
21 The court determined that plaintiff's claim should be been
22 considered as one for "partial disability," and that UNUM's
23 denial was improper.  (Dec. 21, 2006 Order.)  Despite
24 defendant's repeated assertion that their position has been
25 "meritorious," (Def.'s Opp'n to Pl.'s Mot. for Att'ys Fees 6-7),
26 plaintiff prevailed on all issues before the court.
27 Accordingly, this factor also counsels that an award of
28 attorneys' fees is proper.

8

1      A finding of bad faith is <u>not</u> required in order to
2 award attorneys' fees under ERISA.  <u>Smith</u>, 746 at 590 ("Although
3 bad faith is a factor that would always justify an award, it is
4 not required.  As there was no bad faith on either side, this
5 factor should not have been considered decisive."); <u>McElwaine</u>,
6 176 F.3d at 1173 (noting that "bad faith is not a prerequisite
7 to an ERISA fee award").  With the exception of this first
8 factor, all other four <u>Hummell</u> factors weigh in favor of
9 granting plaintiff's request.  Moreover, "absent special
10 circumstances, a prevailing ERISA employee plaintiff should
11 ordinarily receive attorney's fees from the defendant."  <u>Smith</u>
12 <u>v. CMTA-IAM Pension Trust</u>, 746 F.2d 587, 590 (9th Cir. 1984).
13 Accordingly, the court will award plaintiff reasonable
14 attorneys' fees and costs.

15        2.   <u>Amount of Attorneys' Fees</u>

16          The Ninth Circuit has adopted the hybrid
17 lodestar/multiplier approach for determining reasonable fees in
18 an ERISA action.  <u>Van Gerwen v. Guarantee Mut. Life Co.</u>, 214
19 F.3d 1041, 1045 (9th Cir. 2000) (citing <u>Hensley v. Eckerhart</u>,
20 461 U.S. 424 (1983)).  First, a court calculates the "lodestar"
21 amount by multiplying the number of hours reasonably expended on
22 the litigation by a reasonable hourly rate.  <u>Hensley</u>, 461 U.S.
23 at 433.  The party seeking an award must submit evidence
24 supporting the hours worked and the rates requested--and a
25 district court should exclude from the lodestar amount hours
26 that are "excessive, redundant, or otherwise unnecessary."  <u>Id.</u>
27 at 434.

28

9

1          Second, the court may adjust the award upward or

2   downward using a "multiplier" based on the <u>Kerr</u> factors:

3              (1) the time and labor required, (2) the novelty and
           difficulty of the questions involved, (3) the skill
4          requisite to perform the legal service properly, (4)
           the preclusion of other employment by the attorney due
5          to acceptance of the case, (5) the customary fee, (6)
           whether the fee is fixed or contingent, (7) time
6          limitations imposed by the client or the
           circumstances, (8) the amount involved and the results
7          obtained, (9) the experience, reputation, and ability
           of the attorneys, (10) the "undesirability" of the
8          case, (11) the nature and length of the professional
           relationship with the client, and (12) awards in
9          similar cases.

10  <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 364 n.8 (9th Cir.

11  1996) (citing <u>Kerr v. Screen Guild Extras, Inc.</u>, 526 F.2d 67, 70

12  (9th Cir. 1975)).  Many of the <u>Kerr</u> factors have been subsumed

13  in the lodestar approach.  <u>Id.</u> (citing <u>Cunningham v. County of</u>

14  <u>Los Angeles</u>, 879 F.2d 481, 487 (9th Cir. 1988)).  Moreover,

15  while the court should consider the factors established by <u>Kerr</u>,

16  it need not discuss each factor.  <u>Sapper v. Lenco Blade, Inc.</u>,

17  704 F.2d 1069, 1073 (9th Cir. 1983).  Under federal law, there

18  is a strong presumption that the lodestar amount is reasonable--

19  only in rare instances should it be adjusted based on other

20  factors.  <u>Morales</u>, 96 F.3d at 363 n.8; <u>Fischer v. SJB-P.D.,</u>

21  <u>Inc.</u>, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000).

22                    a.   <u>Hours Reasonably Expended</u>

23          An attorney in an ERISA action may recover fees for

24  services provided in conjunction with litigation, including

25  costs prior to filing the complaint.  <u>Dishman v. UNUM Life Ins.</u>

26  <u>Co. of Am.</u>, 269 F.3d 974, 987 (9th Cir. 2001).  In addition, a

27  party can recover fees for work done by paralegals.  <u>Trustees of</u>

28  <u>Const. Indus. and Laborers Health and Welfare Trust v. Redland</u>

10

1  Ins. Co., 460 F.3d 1253, 1256-57 (9th Cir. 2006).  However, a

2  party may not recover for services provided in relation to the

3  administrative proceedings required to exhaust administrative

4  remedies.  Dishman, 269 F.3d at 987 n.51 (citing Cann v.

5  Carpenters Pension Trust Fund for N. Cal., 989 F.2d 313, 314

6  (9th Cir. 1993)).

7        Plaintiff's counsel presents an itemized list totaling

8  237.6 hours of attorney work, 132.70 hours of work by an

9  "assistant," and 4.85 hours of work by a secretary.[5]  (deVries

10  Decl. Ex. 1.)  Defendant challenges the reasonableness of the

11  amount of time spent on two tasks: 1) the creation of a detailed

12  index of the administrative record; and 2) plaintiff's extensive

13  preparation for the December 18, 2006, trial.  (Def.'s Opp'n to

14  Pl.'s Mot. for Att'ys Fees 15-16.)  Defendant additionally

15  objects to numerous tasks that defendant contends were performed

16  as part of UNUM's administrative review.  (Def.'s Opp'n to Pl.'s

17  Mot. for Att'ys Fees 9-14.)

18                    i.   Excessive Hours

19        In October and November, 2006, the "assistant" of

20  plaintiff's counsel billed fifty hours for the creation of a

21  "detailed index of second (final) administrative record and

22  entry into summation litigation support system; production of

23  detailed chronological index, numerical index, and sub-indexes."

24  (deVries Decl. Ex. 1.)  Plaintiff does not provide any further

25  detail explaining the division of these hours or what specific

26  _____

27        [5]   Plaintiff's attorney augmented his total request for
   217.8 hours, with a billing summary for 19.8 more hours of attorney
28  time expended since filing this motion. (Supp. deVries Decl. Ex.
   1.)

                              11

tasks were performed.  The court agrees that spending fifty
hours to organize the administrative record is excessive, and
accordingly will reduce this amount by half (i.e. twenty-five
"assistant" hours).

Plaintiff also asserts that its attorneys spent fifty-
five hours in preparation for the Phase 2 trial before this
court, including thirty hours drafting the trial brief.  The
court finds this to be excessive, especially in light of the
twenty-one hours it took plaintiff's counsel to prepare for the
Phase 1 trial.  This court is unpersuaded that thirty hours is
reasonable to prepare the Phase 2 trial brief, or that an
additional twenty hours were necessary for general trial
preparation.  Moreover, plaintiff counsel's singular line item
for both of these expenses is an insufficient itemization to
convince this court that such an expenditure of time was
reasonable.[6]  Accordingly, the court will also reduce these
hours by half (i.e. twenty-seven and a half attorney hours).

ii.   Unrecoverable Administrative Fees

Defendant contends that many tasks in plaintiff's
bills are unrecoverable because they relate to the
administrative review process.  (Def.'s Opp'n to Pl.'s Mot. for
Att'ys Fees 9-14; see Cann, 989 F.2d at 314.)   While it is

---

[6]   Plaintiff's billing itemization contains one entry on
page 11 which reads, "11/07/06-11/17/06 (Atty) 'Prepare, finalize
and file Trial brief' - 30 hours x $350 = $10,500," and one entry
on page 12, which reads, "12/13/06-12/16/06 (Atty) 'Trial
preparation; detailed review of administrative record and trial
briefs; outline analysis/argument' - 20 hours x $350 = $7,000."
Such vague and condensed entries, for services totaling over
$17,000, are insufficient to support the reasonableness of the fee
requests.

1  undisputed that attorneys' fees are not recoverable for

2  administrative work done <u>prior</u> to filing a complaint, it is an

3  issue of first impression in the Ninth Circuit whether

4  attorneys' fees in an ERISA case may be recovered for work

5  related to administrative review <u>after</u> a complaint is filed,

6  i.e. pursuant to a court-ordered remand.   Plaintiff asks this

7  court to follow the Second Circuit in <u>Peterson v. Continental</u>

8  <u>Casualty Company</u>, where the court awarded attorneys' fees

9  incurred during administrative proceedings ordered by the court.

10 282 F.3d 112 (2d Cir. 2002).

11          Upon review of Supreme Court and Ninth Circuit

12 precedent, this court declines to follow the Second Circuit in

13 <u>Peterson</u>.   The Second Circuit based its holding on

14 interpretation of two Supreme Court cases, <u>Pennsylvania v.</u>

15 <u>Delaware Valley Citizens' Council</u>, 478 U.S. 546 (1986) and

16 <u>Sullivan v. Hudson</u>, 490 U.S. 877 (1989).   However, the Ninth

17 Circuit addressed the general issue of awarding attorneys' fees

18 for administrative work, noting that:

19         [In <u>Delaware Valley</u> and] <u>Hudson</u>, the attorneys' fees
           were incurred in prosecuting a remand through an
20         administrative agency after the claimant's attorney
           prevailed in the district court.   In these
21         circumstances, <u>a court has already decided that the
           party is entitled to prevail</u>, but in the
22         pre-adjudication phase at issue before us, such a
           determination has not yet been made.   Also, the
23         administrative proceedings in those cases were before
           administrative agencies of government.   In the case
24         before us . . . they are actually part of a private,
           albeit regulated, claims process within the pension
25         fund trust, enabling a claimant to obtain review of a
           denial within the trust before having to litigate.   29
26         U.S.C. § 1133(2).

27 <u>Cann</u>, 989 F.2d at 317 (emphasis added).

28

                                   13

1    In Delaware Valley, the subsequent administrative
2  action sought to enforce, through administrative proceedings, a
3  judicially-approved consent decree.  The post-remand
4  administrative procedures were necessary and integral to
5  accomplishing the relief already ordered by the district court.
6  See also Flores v. Shalala, 49 F.3d 562, 571 (9th Cir. 1995)
7  (noting the severely limiting effect of Shalala v. Schaefer, 509
8  U.S. 292 (1993), on the holding of Hudson, such that an award of
9  fees for post-remand administrative work is only proper in the
10 very limited case "in which the court incorrectly retains
11 jurisdiction and this retention of jurisdiction goes
12 unchallenged").

13    In this case, like in Cann, when this court remanded
14 the claim back to UNUM, it had not ruled on the primary
15 substantive dispute, only the proper context for plaintiff's
16 claim.  Plaintiff's claim was then sent back for administrative
17 review consistent with that interpretation.  This review under
18 ERISA was part of a private claims process under ERISA which
19 does not require litigation.  See Amato v. Bernard, 618 F.2d
20 559, 576 (9th Cir. 1980).  As noted by the Cann court, allowing
21 recovery of attorneys' fees incurred during administrative
22 review runs counter to the stated purpose of ERISA[7], because it
23 would "encourag[e] plans to pay questionable claims in order to
24 avoid liability for attorneys' fees, [thereby] reduc[ing] their
25 'soundness and stability.'"  Cann, 989 F.2d at 317.  This

26

27       [7]   Noting the need to promote "the soundness and stability
28 of plans with respect to adequate funds to pay promised benefits."
   29 U.S.C. § 1001(a).

1  reasoning applies whether the administrative review occurs
2  before or after a complaint has been filed.  The court therefore
3  declines to award attorneys' fees for post-remand work related
4  to the administrative review of plaintiff's claim.

5          The party seeking fees bears the burden of submitting
6  evidence to support their request.  Hensley, 461 U.S. at 434.
7  Upon review of the tasks to which defendant objects, the court
8  agrees that most relate to administrative review of plaintiff's
9  claim.  These items all occurred between the two phases of
10 trial, while plaintiff's claim was before UNUM on remand.
11 Moreover, the descriptions evince general communications between
12 plaintiff's attorney, plaintiff, and defendant--there is nothing
13 to contradict the reasonable presumption that work done during
14 this period related to the administrative review.  This court
15 finds that, with six exceptions, all of the tasks highlighted in
16 defendant's opposition are related to the administrative
17 process.[8]  These unrecoverable tasks total 67.55 attorney hours,
18 53.3 assistant hours, and will accordingly be subtracted from
19 plaintiff's request.

20          b.  Reasonable Rate

21 _____ To determine the reasonableness of hourly billing
22 rates, the court looks to the prevailing market rates in the
23 relevant community for similar work performed by attorneys of

24 _____
25      [8]    The court finds that the following six tasks, objected
   to by plaintiff, appear to be reasonably related to the litigation:
26 (1) "6/07/02 - Letter to Client re decision in Phase I trial;" (2)
   "3/04/04 - Review Court's Minute Order, follow up;" (3) "4/26/04 -
27 Status Conference;" (4) "6/17/04 - Review letter from Anna Martin
   and stipulation to continue trial date;" (5) "7/08/04 - File
28 stipulation to continue trial;" (6) "5/19/05 - T/c from Judge
   Shubb's clerk."

15

comparable skill, experience, and reputation.  Blum v. Stenson,
465 U.S. 886, 895 (1984); Chalmers v. City of Los Angeles, 796
F.2d 1205, 1210-11 (9th Cir. 1986).  Under federal law, the
relevant community is the forum in which the district court
sits, as opposed to where counsel is located.  Barjon v. Dalton,
132 F.3d 496, 500 (9th Cir. 1997).

Plaintiff's counsel seeks a rate of $350 per hour for
Mr. deVries, $100 per hour for an unnamed "assistant," and $30
per hour for an unnamed secretary.[9]  Defendant asks this court
to lower Mr. deVries' rate to $190 per hour, and the assistant's
rate to $70 per hour.  Upon consideration of the prevailing
market rates for similar work, this court concludes that
plaintiff's requested rate for those services is reasonable.

In cases brought under the Americans with Disabilities
Act (ADA"), 42 U.S.C. §§ 12101-12300, this court has held the
attorneys fees to $250 per hour for an experienced attorney,
$150 for associates, and $75 for paralegals, pointing out that
the work is relatively standardized and plaintiffs are
reasonably assured of being the prevailing parties in those
cases.  White v. GMRI, Inc., CIV. S-04-0620 slip op. at 16 (E.D.
Cal. Jan. 19, 2006).  In contrast, ERISA cases such as this are
typically unique in their facts and plaintiffs are far from
assured of prevailing.  Consistent with these considerations, a
judge of this court recently approved rates in a class action
ERISA case of $495 per hour for a partner, $295 per hour for an
associate, and $150 per hour for a paralegal  See Aguilar v.

_____

[9]  Because plaintiff does not explain what an "assistant"
is, this court will interpret an assistant to be a paralegal.

16

1  <u>Melkonian Enters., Inc.</u>, CIV. No. 05-0032 slip op. at 8 (E.D.

2  Cal. Jan. 24, 2007).

3          Mr. deVries has been a civil litigation attorney for

4  over thirty years, specializing in insurance claims cases, and

5  is a widely published author and speaker on the subject.

6  (deVries Decl. 4.)  DeVries' declaration establishes that his

7  customary hourly billing rate is $300-350 per hour.  <u>See</u> <u>Davis</u>

8  <u>v. City & County of San Francisco</u>, 976 F.2d 1536, 1547 (9th Cir.

9  1992) (concluding that declarations of prevailing market rate in

10 relevant community are sufficient to establish appropriate rate

11 for lodestar purposes).  While not dispositive, a court may also

12 look to surrounding districts for guidance "because ERISA cases

13 involve a national standard, and attorneys practicing ERISA law

14 in the Ninth Circuit tend to practice in different districts."

15 <u>Mogck v. UNUM Life Ins. Co. of America</u>, 289 F. Supp. 2d 1181,

16 1191 (S.D. Cal. 2003) (approving rates for ERISA attorneys of

17 $350 and $325 per hour); <u>see e.g.</u>, <u>Mardirossian v. Guardian Life</u>

18 <u>Ins. Co. of Am.</u>, 457 F. Supp. 2d 1038, 1047 (C.D. Cal. 2006)

19 (awarding $400 per hour for an ERISA attorney with over twenty

20 years experience); <u>Farhat v. Hartford Life and Acc. Ins. Co.</u>,

21 CIV. No. 05-0797 slip op. at 7 (N.D. Cal. Aug. 30, 2006)

22 (finding that a reasonable rate for experienced ERISA attorneys

23 falls between $400 and $495 per hour).

24         Where a plaintiff submits affidavits regarding

25 prevailing rates in the community, the Ninth Circuit has implied

26 that defendants cannot simply disagree with this evidence, but

27 should "support their arguments with any affidavits or evidence

28 of their own regarding legal rates in the community."  <u>See</u>

17

1  <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 896 F.2d 403,

2  407 (9th Cir. 1990).  Other than a single case from the Northern

3  District, defendant provides no affidavits or persuasive legal

4  authority that suggests plaintiff's requested rate is

5  unreasonable.  Accordingly, the court will award attorneys' fees

6  based on a rate of $350 per hour for Mr. deVries, $100 per hour

7  for "assistant."

8          Mr. deVries' request to be reimbursed for work done by

9  his secretary, however, will be disallowed.  In <u>Eiden v. Thrifty</u>

10 <u>Payless Inc.</u>, 407 F. Supp. 2d 1165, 1171 (E.D. Cal., 2005)

11 this court denied a request to include fees for work performed

12 by legal secretaries, upon the theory that the salaries and

13 benefits paid to support staff are "a part of the usual and

14 ordinary expenses of an attorney in his practice," and are

15 properly classified as overhead. (Citing <u>In re Pac. Exp., Inc.</u>,

16 56 B.R. 859, 865 (Bkrtcy. E. D. Cal., 1985)).  Admittedly, there

17 may be communities where such salaries and benefits are

18 customarily passed on to clients in the form of legal bills, and

19 thus would be recoverable as part of attorneys' fees.  <u>See</u>

20 <u>Missouri v. Jenkins</u>, 491 U.S. 274, 285 (1989).  However, it is

21 not the court's understanding that such is generally the

22 practice in the Sacramento community.

23          3.   <u>Costs</u>

24          In an ERISA action, courts may award "only the types

25 of 'costs' allowed by 28 U.S.C. § 1920, and only in the amounts

26 allowed by section 1920 itself, by 28 U.S.C. § 1821 or by

27

28

18

similar such provisions."[10]   <u>Agredano v. Mutual of Omaha Cos.</u>, 75

F.3d 541, 544 (9th Cir. 1996).  Plaintiff submits a bill of

costs totaling $442.45, for filing, service, and court reporter

fees.

Defendant's challenges plaintiff's request for

reimbursement of $232.45 in court reporter fees, for a

transcript of UNUM's field investigator's interview with

plaintiff.  The field visit (sought in conjunction with an

"independent medical examination") occurred at the urging of

UNUM as part of its claim investigation process.  (UACL 00654.)

Plaintiff's counsel insisted the court reporter attend, although

the interview did not require it.  (<u>Id.</u>)  The court therefore

concludes that the field interview (and accompanying transcript)

was part of the administrative review process and thus, as per

this court's previous discussion, <u>supra</u> Section

(II)(B)(2)(a)(ii), not recoverable.  Accordingly, the court will

allow plaintiff to recover costs in the amount of $210.00.

///

///

---

[10]   28 U.S.C. § 1920 provides:
A judge or clerk of any court of the United States may tax as costs
the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the
stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily
obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of
interpreters, and salaries, fees, expenses, and costs of special
interpretation services under section 1828 of this title.
A bill of costs shall be filed in the case and, upon allowance,
included in the judgment or decree.

1  IV.  Conclusion

2  _____In accordance with the foregoing discussion,

3  attorneys' fees, litigation expenses, and costs are awarded in

4  the following amounts:

5  Mr. deVries:

6      237.6 hrs -(27.5 + 67.55)     x     $350/hr  =  $49,892.50 +

7  Assistant:

8      132.7 hrs -(53.3 + 25)        x     $100/hr  =   $5,400.00 +

9  Costs                                                $210.00 =

10                                             --------------

11                                   TOTAL_____ **$55,502.50**

12  _____IT IS THEREFORE ORDERED that plaintiff's motion to

13  amend the judgment be, and the same hereby is, GRANTED.

14  Plaintiff is entitled to prejudgment interest on benefits

15  withheld in the amount of $27,147.19.

16  _____IT IS FURTHER ORDERED that plaintiff's motion for

17  attorneys' fees and costs be, and the same hereby is, GRANTED,

18  in the amount of $55,502.50.

19  DATED: February 12, 2007

20                          _____

21                          WILLIAM B. SHUBB
                            UNITED STATES DISTRICT JUDGE
22

23

24

25

26

27

28

20